UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BORIS O. BERGUS,                    )
                                   )
          Plaintiff,               )
                                   )
v.                                 )    CIVIL ACTION
                                   )    NO. 18-10323-DPW
AGUSTIN M. FLORIAN,                )
                                   )
          Defendant.               )

MEMORANDUM AND ORDER
REGARDING
POST-TRIAL MOTIONS
October 19, 2023

After a jury trial providing success on one of two claims
pressed pursuant to MASS. GEN. LAWS ch. 110A, § 410(a)(2) — the
Commonwealth's Blue Sky securities law — Plaintiff Dr. Boris O.
Bergus sought attorney's fees, expenses and costs.  Defendant
Dr. Agustin M. Florian, who had previously filed a collection of
post-trial motions challenging Dr. Bergus's success, parried
with an effort effectively to stay the resolution of this
federal case (the "federal case") pending the outcome of a
parallel Blue Sky case in Massachusetts state court — with a
trial date next fall — which had been filed on April 21, 2016,
nearly two years before this case was commenced on February 20,
2018.

At a motion hearing in this matter on April 24, 2023, I
resolved the outstanding post-trial motions in substance by

summarily denying Dr. Florian's efforts to avoid the jury's
verdict and to stay the case while granting, in large part, Dr.
Bergus's requests for fees, expenses and costs.  I promised to
provide in a subsequent Memorandum and Order the precise amounts
of fees, expenses and costs to be awarded.  This is that
Memorandum and Order and it coincidentally sets forth in greater
detail the bases for my prior summary *ore tenus* determinations
with respect to the parties' various post-trial motions.

## I. INTRODUCTION

In approaching my explanatory task in this Memorandum, I
have found it useful to situate the remaining disputes in this
case by reflecting on the pattern of requests for stays and
related rescheduling the parties sought over the period May 2019
through April 2023 in the state case filed by Dr. Florian,
*Florian* v. *Bergus*, No. 1682CV00515 (Mass. Super. Ct. Norfolk
County) (the "state case").

I recognize that the Covid emergency was in effect during
much of this period and, moreover, that Dr. Florian was
represented by counsel in the state case other than the counsel
who appeared before me in the federal case.  Nevertheless, the
manipulative quality of Dr. Florian's initiatives by the use of
different counsel in the two cases comprising the litigation ——
and the enabling role of Dr. Bergus's counsel appearing in both
the state and the federal case —— was cast in vivid light at the

April 24, 2023 motion hearing, as to which the parties were notified on April 11, 2022, where I announced summarily the substance of my post-trial motion rulings.

On April 20, 2023, four days before the scheduled federal motion hearing and over a week after notice of that hearing was provided, Dr. Bergus's counsel filed an "Emergency Motion" to convert a pre-trial conference in the state case to a trial assignment conference.  Breathlessly reporting to the state court that I had set the case for hearing on the various outstanding motions and that "[e]ntry of final judgment in the Federal Securities Case might enable the parties to reach a negotiated resolution in this case," Dr. Bergus sought to convert the upcoming "April 25th [initial] pretrial conference to a trial assignment conference at which the Court in consultation with the parties will set a date for commencement of a jury trial as well as set schedules for a final pretrial conference . . . ."  Yet the parties chose, as was their practice, not to inform me of the rescheduling request filed in the state court.

After previously experiencing their effective concealment of the delays they secured in the earlier filed state court action, I thought it prudent to check the docket in the state court action immediately before coming out on the bench for the April 24 hearing to see what rescheduling activity the parties might have been arranging in the state court.  I was not

surprised to find that the parties again failed to advise me of what they were up to in the state court.[1]  But it came as news to Dr. Florian's counsel in the federal case.[2]  The neglect of timely transparency epitomized the way the parties have circled around each other for over seven years without engaging fully over what had been essentially a single quiet war conducted on two fronts.  The federal front will be closed with the entry of final judgment directed by this Memorandum.

## II. DR. FLORIAN'S MOTIONS TO STAY AND AMEND PLEADINGS

I first briefly address Dr. Florian's motions to stay the resolution of this case while awaiting a final resolution in the parties' parallel state court case.

### A.    *Dr. Florian's Motion to Stay [Dkt. No. 184]*

Dr. Florian moved [Dkt. No. 184] to Stay Payment of Judgment Award and Award of Attorneys' Fees until the parallel state case in Norfolk Superior Court could be resolved by its own separate judgment.  As Dr. Bergus notes in his opposition, Dr. Florian does not support his motion to stay with a

---

[1] The April 24, 2023 Hearing Transcript is Dkt. No. 104 in the federal case.  It sets forth my summary rulings and provides a sense of the lack of transparency to the parties' state court rescheduling.

[2] I credit the statement of Attorney Ryan C. Siden, Dr. Florian's counsel in the federal case, that he did not know about the Emergency filing in the state case until he came to the April 24, 2023 hearing and I referenced it at the outset of the hearing.  *Id.* at 4, 13.

cognizable legal foundation and instead rests upon assertions of
purported generalized inequities to argue that I should stay
this action pending trial in the state court.

Once I was made fully aware in September 2022 of the
parties' use of their two pending cases — state[3] and federal — as
part of an Alphonse and Gaston routine in which both declined to
affirm trial readiness, I put the federal case on a reliable
trial track with firm dates for pretrial filings and the
commencement of any trial necessary.

First, I took up Dr. Florian's motion for summary judgment,
denying it as to the Massachusetts Uniform Securities Act, MASS.
GEN. LAWS ch. 110A, § 410(a)(2), but granting it as to breach of
fiduciary duty under Massachusetts law. *Bergus* v. *Florian*, 2022
WL 7670168 (D. Mass. Oct. 13, 2022).

In the wake of the summary judgment orders, the parties
stipulated to the dismissal of the remaining MASS. GEN. LAWS ch.
110A claims[4] and the case proceeded to trial on the promised

---

[3] The parties' repeated successful requests for continuances in
the state case and the grounds for them are evident in the state
case docket entries and related images of the parties'
submissions beginning with the withdrawal of Dr. Florian's
previous counsel in the state case on April 25, 2019 and the
notice of appearance of his current counsel on May 9, 2019.
[4] In my Memorandum regarding summary judgment, I noted that Dr.
Bergus also alleged in his complaint that Dr. Florian violated
MASS. GEN. LAWS ch. 110A, § 410(a)(1) relating to registration
requirements and MASS. GEN. LAWS ch. 110A, § 410(b) relating to
secondary liability, *Bergus* v. *Florian*, 2022 WL 7670168, at *6
n.21 (D. Mass. Oct. 13, 2022).  Consequently, I did not address

trial date regarding the two separate investment transactions as to which Dr. Bergus contended Dr. Florian violated § 410(a)(2) by his role in connection with them.

Dr. Florian cannot continue in this court to make use of pending state litigation as a means to stall progress in these proceedings. *Cf. Bd. of Trs. of Iuoe Loc. 4 Pension Fund* v. *Alongi*, No. 21-CV-10163-FDS, 2022 WL 17541936, at *4 (D. Mass. Dec. 8, 2022) (Saylor, C.J.) ("An unexpected delay in the state-court schedule does not provide good cause for amending claims in federal court where defendant chose to file and maintain the separate state-court action.").

Of course, there is here no mere unexpected delay in the state court schedule, but rather a carefully considered and repeatedly asserted effort to avoid the rigors of enforceable trial schedules at all. I decline to permit Dr. Florian the opportunity further to continue to use the long pending state court action as both a sword and a shield for Fabian litigation tactics designed to forestall finality in the federal case.

---

those theories in the Memorandum.  Dr. Bergus chose to stipulate to their dismissal in the run up to trial.

  The parties also agreed the trial would not include the counterclaim asserted by Dr. Florian for abuse of process.  *See* Dkt. No. 104 (Clerk Notes for October 14, 2023 Scheduling Conference, noting "[t]he trial will not include the counterclaim.") and Dkt. No. 107 (Stipulation of the Parties Regarding Jury Trial commencing Monday January 9, 2023, stipulating that "[t]he jury trial will not include the defendant's counterclaim.").

Rather, by a final judgment in this case, I assist the parties in advancing more efficiently and seamlessly toward full finality of all aspects in the litigation between them.

As will appear below, I will enter final judgment in this matter and remit the parties to the Norfolk Superior Court to complete resolution of their dispute in accordance with the most recent state court schedule, a time period which should permit any appeal from the final judgment in this action — if diligently prosecuted — to be addressed. Further distraction from the material issues now ripe before me merely drives up the cost of litigation and extends the time required to bring the parties' entire dispute to resolution. Accordingly, I denied Dr. Florian's motion to stay.

**B.    *Dr. Florian's Motion for Leave to File Amended Opposition Pleadings [Dkt. No 189]***

As an adjunct to his own categorical strategy of delay-by-stay, Dr. Florian moved [Dkt. No. 189] to file several amended opposition pleadings purportedly to correct the record regarding facts concerning a standstill agreement reached in the Norfolk Superior Court case. He contended that there is "good cause" for these amendments because "it is in the interests of judicial economy" and "it will save the Plaintiffs' [sic] time."

Dr. Florian does not cite to a rule or legal doctrine establishing his "right" to amend under these circumstances, nor

has he ever requested leave to file a reply brief pursuant to Local Rule 7.1 to Dr. Bergus's own opposition.

Having reviewed the joint filings requesting a stay in the Norfolk Superior Court action pending an outcome in the federal action, I found Dr. Florian's assertions related to any "standstill agreement" immaterial for resolving the various motions now before me.  The parties' direction of the course of proceedings, tacking between the parallel state and federal court actions, has been conducted to secure unmerited delay. There should be no continued unmerited delay in either the federal or the state litigations.  To that end, I will not enable the delay instinct in deployment of the judicial systems of two separate sovereigns further, but will remit the remainder of the parties' dispute to state court upon resolution of this federal case with entry of final judgment consistent with this Memorandum.  As is evident from my references to the amended pleadings, I have read and considered them.  I do not propose to delay this litigation further; consequently, I granted Dr. Florian's leave to file amended opposition pleadings in order to avoid continuing collateral disputes regarding the record before me.

### III. DR. BERGUS' MOTIONS FOR ATTORNEY'S FEES AND EXPENSES

Dr. Bergus initially requested "fees in the amount of $646,401.00 plus expenses of $2,852.41 totaling $649,253.41 for

the period from inception in February 2016 through January 26, 2023." [Dkt. No. 159 at 1]  Dr. Bergus also requested in his reply to Dr. Florian's opposition "reasonably estimated fees for work from January 27, 2023 through [his fees] filing in the amount of $12,000," [*id.*], and an increase in fees "by $36,813.50 . . . for the fees incurred from and after January 27, 2023 through March 13, 2023," [Dkt. No. 193-1 at 8].  Taken together, Dr. Bergus is now requesting $695,214.50 in fees and $2,852.41 in expenses for his success in this case.

## A.   *Standard of Review*

Mass. Gen. Laws ch. 110A, § 410(a)(2) states, in relevant part, that "reasonable attorney's fees" are available to the aggrieved party when an individual "offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made . . . not misleading."  Dr. Bergus is eligible for some amount of attorney's fees because he succeeded at trial on one of his two claims under that section of the statute.

At the outset, I must observe as a formal matter that I have for several decades emphasized that I look to Massachusetts law to determine the appropriate means of calculating reasonable attorney's fees in settings such as this.  *See Sorenson* v. *H & R Block, Inc.*, No. CIV.A. 99-10268-DPW, 2005 WL 2323196, at *3 (D. Mass. Sept. 1, 2005) (Woodlock, J.) ("Where, as here, the court

exercised diversity jurisdiction, state law controls.").  I must also observe as a practical matter, that Massachusetts law and federal law do not differ materially on the relevant issues in this litigation.  Both Dr. Bergus and Dr. Florian make reference to and respectively utilize the "lodestar method," which "contemplates judicial ascertainment of 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate' as the starting point in constructing a fee award." *Coutin* v. *Young & Rubicam P.R., Inc.*, 124 F.3d 331, 337  (1st Cir. 1997) (quoting *Hensley* v. *Eckerhart*, 461 U.S. 424, 433 (1983)).

The Massachusetts Supreme Judicial Court has observed that "[a] fair market rate for time reasonably spent preparing and litigating a case is the basic measure of a reasonable attorney's fee under State law as well as Federal law." *Fontaine* v. *Ebtec Corp.*, 613 N.E.2d 881, 891 (Mass. 1993) (describing calculation of attorney's fees in age discrimination matter); *see also Joyce* v. *Town of Dennis*, 720 F.3d 12, 26 (1st Cir. 2013) ("The Massachusetts Supreme Judicial Court . . . has adopted the 'lodestar' method commonly used by federal courts . . . ."); *Adams* v. *Zimmerman*, 73 F.3d 1164, 1177 (1st Cir. 1996) ("[t]he lodestar approach to calculation of attorneys' fees is a recognized method of computation").

The Appeals Court of Massachusetts has further clarified its understanding of the SJC's guidance in *Fontaine* v. *Ebtec Corp.,* explaining that "*Fontaine* does not require use of the lodestar approach; rather, it states that such an approach may be advantageous." *WHTR Real Est. Ltd. P'ship* v. *Venture Distrib., Inc.*, 825 N.E.2d 105, 111 (Mass. App. Ct. 2005).

In other circumstances where Massachusetts law has provided for "reasonable attorney's fees," the First Circuit has determined that "there is no 'pat formula' for computing a fee award." *Star Fin. Servs., Inc.* v. *AASTAR Mortg. Corp.*, 89 F.3d 5, 16 (1st Cir. 1996) (citation omitted). Rather, "the amount awarded should be determined by what the 'services were objectively worth.'" (citation omitted), a calculation "largely discretionary," in which the court of appeals will "avoid extensive second guessing." *Id.*

The SJC has outlined the following factors for consideration: "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." *Linthicum* v. *Archambault*, 398 N.E.2d 482, 488 (Mass. 1979), *abrogated by Knapp Shoes, Inc.* v. *Sylvania Shoe Mfg. Corp.*, 640 N.E.2d 1101 (Mass. 1994). As the Appeals Court of

Massachusetts has explained, the lodestar calculation brings the *Linthicum* factors "into play indirectly." *Siegel* v. *Berkshire Life Ins. Co.*, 835 N.E.2d 288, 294 n.8 (Mass. App. Ct. 2005). "For example, the complexity of the case is likely to be reflected in the judge's finding as to the amount of time reasonably spent on the matter, and the ability and reputation of the attorney are likely to be reflected in the judge's finding as to a reasonable hourly rate." *Id.*

Given this guidance, I will use the lodestar calculation as a "starting point" in this matter, *Coutin*, 124 F.3d at 337, first, "calculat[ing] the time counsel spent on the case, subtract[ing] duplicative, unproductive, or excessive hours," *Gay Officers Action League* v. *Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001), and then "identify[ing] 'a reasonable hourly rate or rates — a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence,'" *Pérez-Sosa* v. *Garland*, 22 F.4th 312, 321 (1st Cir. 2022)(quoting *Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps.* v. *Ray Haluch Gravel Co.*, 745 F.3d 1, 5 (1st Cir. 2014)). Following the initial calculation, I then have a basis to "adjust the lodestar itself, upwards or downwards, based on any of several different factors, including the results obtained and the time and labor actually required for the efficacious

handling of the matter."  *Torres-Rivera* v. *O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008).

Before I turn to that task, however, I will take up a preliminary hurdle Dr. Florian attempts to erect to bar awarding Dr. Bergus *any* attorney's fees at all.

## B.   *Outright Denial of Attorney's Fees for "Special Circumstances" is Unwarranted*

Dr. Florian contends that, despite statutory authorization, I should not award *any* fees to Dr. Bergus because existing "special circumstances" would "render the award . . . unjust." *De Jesús Nazario* v. *Morris Rodríguez*, 554 F.3d 196, 200 (1st Cir. 2009).  Dr. Florian directs my attention principally to the following factors, which he contends in his briefing counsel against a fee award: (1) Dr. Florian received none of the money that Dr. Bergus lost via his investment, (2) delays in the state court case between the parties make payment to Dr. Bergus at this juncture inequitable, and (3) Dr. Florian is 84-years-old and his wife was recently diagnosed with a serious medical condition.

Dr. Florian does not rely on the pertinent Massachusetts statute to support his contention that "special circumstances" is a material consideration.  I recognize there is a separate statutory provision MASS. GEN. LAWS ch. 151B, § 9 that explicitly authorizes "reasonable attorney's fees and costs unless *special*

*circumstances* would render such an award unjust." (emphasis added). But the pertinent statute here, MASS. GEN. LAWS ch. 110A, § 410(a)(2), contains no such qualifier. I thus have no express statutory authority to apply a "special circumstances" qualifier.

In any event, even if I were to have express statutory authority to do so, the circumstances presented by Dr. Florian are insufficient to warrant a complete denial of fees. *See De Jesús Nazario*, 554 F.3d at 200 (explaining that "the sorts of 'special circumstances' that would permit the outright denial of a fee award . . . are few and far between"). Dr. Florian has not alleged "outrageous or inexcusable conduct on the part of the plaintiff" or "bad faith or obdurate conduct." *Id.* (citations and quotations omitted). And while the reported circumstances in Dr. Florian's personal life are unfortunate, as presented they do not qualify as an "unjust hardship" sufficient to overcome payment of the award of appropriate fees to his successful adversary. *Id.* at 201 (citation omitted). There is nothing inequitable to adjudication of this case in this court prior to a final decision regarding the state case in the state court. I will not decline award of fees on that basis and turn now to the lodestar calculation.

14

C.    *Lodestar Calculation – Reasonable Hours*

Dr. Bergus requests fees for a total of 1270.99 hours, a
number he asserts is a reduction from the larger number of hours
actually expended to bring this matter to a resolution.  He has
reduced his fee request to adjust for unrelated or
administrative hours, as well as to remove hours expended on
unmeritorious claims and motions, specifically his motion to
dismiss Dr. Florian's counterclaim, the August 2019 motion for
attachment that he withdrew, and a portion of the time spent on
his opposition to Dr. Florian's motion for summary judgment.

Irrespective of those reductions, Dr. Florian appears to
contend that I should reduce Dr. Bergus's requested hours
further for the following reasons: (1) the request contains
hours spent on unsuccessful claims that are not interconnected;
(2) Dr. Bergus's reductions for unsuccessful claims and
unproductive hours are "woefully insufficient"; and (3) Dr.
Bergus's billing records suggest an inappropriate disregard of
duties of rigor in timekeeping.

1.    Interconnected Claims

Dr. Florian contends that Dr. Bergus is not entitled to
fees for his time spent on (1) the 2014 investment claim, which
the jury rejected at trial; and (2) on the fiduciary duty claim,
which I disposed of at summary judgment, *see Bergus* v. *Florian*,
No. 18-10323-DPW, 2022 WL 7670168, at *11-12 (D. Mass. Oct. 13,

15

2022).  Dr. Bergus asserts that he has already used his "billing
judgment" to reduce his hours where possible but argues that
further reduction is unnecessary because the successful claim
and unsuccessful claims were intertwined around a common nucleus
of facts.

When assessing reasonable hours, I "may disallow time spent
in litigating failed claims."  *Torres-Rivera*, 524 F.3d at 336
(describing lodestar calculation in 42 U.S.C. § 1988 fees
matter).  In circumstances where a plaintiff prevails on some,
but not all, fee eligible claims,

> the question becomes whether the claims on which they
> lost in the same suit were *unrelated* to the successful
> ones (in which event no fees may be awarded for work on
> the unsuccessful claims), or whether, instead, the
> losing claims included "a common core of facts," or were
> "based on related legal theories," linking them to the
> successful claim. In the latter event, the award may
> include compensation for legal work performed on the
> unsuccessful claims.

*Garrity* v. *Sununu*, 752 F.2d 727, 734 (1st Cir. 1984) (quoting
*Hensley*, 461 U.S. at 435); *see also Quarterman* v. *City of
Springfield*, 74 N.E.3d 265, 275 (Mass. App. Ct. 2017) ("In
general, when only some claims are successful, 'no fee should be
awarded for services [employed pursuing an] unsuccessful claim,
unless the court finds that the unsuccessful claims are
sufficiently interconnected with the claims on which [t]he
plaintiff prevails.'" (alterations in original) (citation
omitted)).  "The burden is on the plaintiff to show an

interconnection between the failed and successful claim . . . ."
*Haufler* v. *Zotos*, 881 N.E.2d 170 (Table), 2008 WL 425639, at *1
(Mass. App. Ct. Feb. 15, 2008).  Where the plaintiff "plausibly
asserts that the time cannot be allocated between successful and
unsuccessful claims, it becomes the fee-target's burden to show
a basis for segregability."  *Lipsett* v. *Blanco*, 975 F.2d 934,
941 (1st Cir. 1992).

With respect to the separate claims regarding the 2012 and
2014 investments, brought pursuant to Mass. Gen. Laws ch. 110A,
§ 410(a)(2), I observe both claims are under the same statutory
provision.  Both claims center upon investments in the same
company and involve the same key individuals.  The investigation
of the 2012 and 2014 investments "necessitated a review of the
same constellation of facts," *cf. Connolly* v. *Harrelson*, 33 F.
Supp. 2d 92, 97 (D. Mass. 1999), *aff'd*, 201 F.3d 426 (Table)
(1st Cir. 1999).  And, having "had a front-row seat at the trial
and before," *Wagenmann* v. *Adams*, 829 F.2d 196, 225 (1st Cir.
1987), I observe that both parties presented the factual
elements underpinning these claims together at various stages of
this case.  The 2012 and 2014 investments are undoubtedly
interconnected.

Whether the fiduciary duty claim I dismissed[5] could be considered interconnected presents a different question.  Dr. Bergus asserts that the fiduciary duty claim arose out of the relationship between the parties and posits "that the 'unique circumstances of' Dr. Florian's solicitation of both the 2012 and 2104 investments created a fiduciary relationship."  [Dkt. No. 159 at 11]  Thus, the fiduciary duty claim and the successful § 410(a)(2) claim are interrelated, Dr. Bergus contends, because they rely upon the same facts despite involving disparate legal theories from Blue Sky law.  However, "a court may isolate and address claims arising out of the same

---

[5] I must note that since my summary judgment decision was rendered *inter alia* dismissing the fiduciary duty claim, the law of the Commonwealth regarding fiduciary duty in the investment advice domain has shifted favorably in Dr. Bergus's direction. At the time I wrote that decision, Judge Ricciuti in the Business Litigation Session of the Superior Court had held that certain regulatory efforts to make the Commonwealth's fiduciary duty protections for investors more rigorous were unconstitutional.  The Supreme Judicial Court immediately took the matter up on Direct Appellate Review and reversed in an opinion that recognizes robust regulatory authority in this area.  *Robinhood Financial LLC* v. *Secretary of the Commonwealth*, 492 Mass. 696 (2023).  This, of course, is a matter of Massachusetts law that can be dealt with in the Commonwealth's courts in a more efficient way to determine the applicability of recently developed state law enunciated by the Commonwealth's highest tribunal.  By entering final judgment in this case, I leave to the parties whether and, if so, how to continue pursuit of a remedy on appeal in the federal courts or shift their attentions to completing the unfinished business of the previously stalled state litigation.  Final judgment in this federal case will put them to that choice.

facts." *Sorenson*, 2005 WL 2323196, at *6; *see Figueroa-Torres* v. *Toledo-Dávila*, 232 F.3d 270, 278 (1st Cir. 2000) ("While it is true that the claims all stemmed from a common incident . . . it does not follow that the claims cannot be severed.").  The facts required to establish a breach of fiduciary duty and the elements of the claim itself cannot be said to be "wholly different than those relating to" § 410(a)(2).  *Figueroa-Torres*, 232 F.3d at 279.

Having satisfied myself that the breach of fiduciary duty claim here was not fully related — but not unrelated — to the successful Blue Sky law claim, I seek a more nuanced view to the meaning of interconnectedness.  In doing so, I turn to the amount of hours undergirding the lodestar calculation for the fee award that may be treated as interconnected to the successful claims.  In this connection, Dr. Bergus already has reduced Attorney Goren's hours by 15 to account for his time spent on the fiduciary duty claim at summary judgment.  [Dkt. No. 159 at 10 n.5, 11]  Beyond stating that "Dr. Bergus should be denied all hours spent . . . on the breach of fiduciary duty," [Dkt. No. 178 at 12] Dr. Florian does not provide a means for more precisely isolating the fiduciary duty claims.  Given the state of the record, I find Dr. Bergus's reduction reasonable and sufficient in tailoring the lodestar calculation here.

2.   Excessive Billing

"Even when a party prevails on a particular claim . . he is
only entitled to recover fees for time productively spent."
*United States* v. *One Star Class Sloop Sailboat built in 1930
with hull no. 721, named "Flash II"*, 546 F.3d 26, 39 (1st Cir.
2008).   Accordingly, I may "exclud[e] those hours that are
'excessive, redundant, or otherwise unnecessary.'" *Cent.
Pension Fund*, 745 F.3d at 5 (quoting *Hensley*, 461 U.S. at 434).
Dr. Florian calls my attention to billing he asserts is related
to the state court action and administrative matters,
duplicitous time entries, purportedly unnecessary investigation,
and the withdrawn motion for attachment.   Dr. Florian also
contends that hours related to the second motion for attachment,
which I denied as moot, *see Bergus*, 2022 WL 7670168, at *12, *6
n. 20, should be removed.

In particular, Dr. Florian has submitted a list of 23.33
hours he requests that I remove because they relate to the state
court case, administrative dealings and the like.   Dr. Bergus
has already reduced his request by 10 hours on this basis,
though his submitted records do not identify which entries he
has eliminated.   As a result, Dr. Florian effectively requests
the removal of an additional 9.63 hours, billed at Attorney
Goren's rate, and 3.70 hours, billed at the paralegal rate, to
account for a total of 23.33 hours.   [Dkt. No. 179-2 at 3]

Having reviewed Dr. Florian's request, I will reduce Dr. Bergus's award by **8** hours on this basis, billed at his attorney rate, to reflect inadequate billing record support.

I also will reduce the hours Dr. Bergus spent preparing his stipulation for dismissal of certain claims.  Dr. Florian directs me to two billing entries on December 5, 2022, one for 3.00 hours and another for 3.70 hours, that contain reference to preparing his stipulation of dismissal.  I find that time spent voluntarily dismissing claims for further pursuit is almost by definition not productive activity, but rather is a confession of error in pursuing the claims.  While prior activity is not non-compensable as such and Dr. Florian does not offer any way to refine the matter further, I accept Dr. Florian's principal objection to the actual stipulation activity.  Moreover, because these entries are block billed and I cannot determine how much time was spent on each activity, I find a separate basis to disallow these entries in their entirety, reducing the award by **6.70** hours at Attorney Goren's rate.

With respect to the motions for attachment, I will not reduce Dr. Bergus's billing further.  Dr. Bergus has already reduced his billing as to the first motion for attachment.  And, as Dr. Bergus notes, hours related to the second motion for attachment could have been reduced or eliminated if Dr. Florian had himself made both Dr. Bergus and this court aware of his

sale of the Dover property in a timely manner.  Dr. Florian's
failure to do so is the source of this branch of the fee claim;
I will not assess it against Dr. Bergus.

Dr. Florian contests the 57 hours Dr. Bergus expended on
investigative work and preparation of the Complaint, summarily
asserting that the investigative work was irrelevant to the
claims in the complaint.  I disagree.  Dr. Bergus "may recover
fees for time spent before the formal commencement of the
litigation on such matters as attorney-client interviews,
investigation of the facts of the case, research on the
viability of potential legal claims, [and] drafting of the
complaint and accompanying documents."  *Webb* v. *Bd. of Educ. of
Dyer Cnty.*, 471 U.S. 234, 250 (1985) (Brennan, J., concurring in
part and dissenting in part).  Dr. Florian's conclusory
assertions that this time was spent investigating Señor Baca or
Dr. Florian's wife do not justify decreasing hours on this basis
since from all that appeared at trial, they were persons
implicated in the development of the transactions at issue in
the federal case.

### 3.   Insufficient Time Keeping

Dr. Florian contends that Dr. Bergus's submissions indicate
his billing was not contemporaneous and records reflect block
billing or other "outrageousness" constituting excessive
billing.  Dr. Florian has not adequately substantiated his claim

that Dr. Bergus's counsel failed to input time contemporaneously and I will not reduce the requested fees on this basis. This is not a case where the party seeking fees "reconstructed" hours after the fact, *cf. Mary G-N* v. *City of Northampton*, No. 14-30113-MGM, 2015 WL 9462080, at *3-4 (D. Mass. Dec. 28, 2015) (citation omitted) (reducing fees in part due to failure to record time contemporaneously); rather, counsel for Dr. Bergus plausibly attests that he and his co-counsel made time entries on a daily contemporaneous basis and I accept those assertions.

As to block billing, and the quality of billing entries more generally — including duplicative and vague entries — I agree with Dr. Florian, though only as to Attorney Goren's timekeeping. For example, one entry for 1.30 hours [Dkt. No. 166 at 56] states the following: "Email from Key Discovery. Tel disc Key Discovery. Email to B Bergus. Review emails collected. Email and tel disc re emails." This description provides little to no useful information from which I can glean specific purposes for the time reflected by the entry. When a "party furnishes time records that are ill-suited for evaluative purposes, the court is hampered in ascertaining whether those hours were excessive, redundant, or spent on irrelevant issues." *Torres-Rivera*, 524 F.3d at 340. Where that is the case, I may reduce the award. *See id*. (explaining that a "fifteen percent

global reduction plainly falls within the range of
reasonableness").

The vagueness of Attorney Goren's[6] time entries, coupled
with some block billing and duplicative entries, warrant a
further reduction of 10% of his hours billed as attorney time as
a matter of rough justice. *See Fox* v. *Vice*, 563 U.S. 826, 838
(2011) (Kagan, J.) ("The essential goal in shifting
fees . . . is to do rough justice, not to achieve auditing
perfection. So trial courts may take into account their overall
sense of a suit, and may use estimates in calculating and
allocating an attorney's time.").

**D.    *Lodestar Calculation - Reasonable Rates***

I now turn to the appropriate market rate for Dr. Bergus's
principal attorney, Mr. Goren, and his supporting colleagues.

I "have wide discretion in selecting fair and reasonable
hourly rates for attorney time," *Pérez-Sosa*, 22 F.4th at 326,

---

[6] I note that some of the entries of O'Connor, Carnathan & Mack
LLC also appear superficially to rely upon block billing.  [*See*
Dkt. No. 163 at 89 (billing entry of 6.80 hours for "Review team
and Siden correspondence re exhibits, stipulation; research and
work on translation motion in limine; review and comment on jury
instructions; Team Conference re pretrial; attend pretrial
conference of counsel with Siden")]  Overall, however, these
entries "contain[] the necessary keys to testing [the billing
entries'] reasonableness," *Brewster* v. *Dukakis*, 786 F.2d 16, 19
(1st Cir. 1986), and in this circumstance, this form of block
billing does not "pose a challenge to the court's ability to
decipher the entries' reasonableness." *Muehe* v. *City of Boston*,
569 F. Supp. 3d 80, 86 (D. Mass. 2021).

and "look to a constellation of factors, including the rate that the particular attorney actually charges to clients in the ordinary course . . . and data evidencing the prevailing market rate for counsel of comparable skill" when determining the appropriate rate, *id.* at 325 (citation and quotations omitted). In circumstances where an attorney "assume[s] the risk of nonpayment" by taking a case on a contingency basis, both the Supreme Judicial Court of Massachusetts and the First Circuit, as reflected in its related case law interpreting SJC directions, have indicated that enhancement of the lodestar is inappropriate. *Connolly*, 33 F. Supp. 2d at 98 (citing *Fontaine*, 613 N.E.2d at 891); *see Lipsett*, 975 F.2d at 943 ("[W]hen a prevailing party seeks an attorneys' fee award in a civil rights case . . . enhancement of the lodestar because of counsel's risk of nonpayment is not permitted.").

### 1.   For Mr. Goren and his directly supporting colleagues

Attorney Goren, a solo practitioner, has 49 years of experience.  He requests a rate of $650 per hour for his hours billed at an attorney rate.  For hours entered at a paralegal rate, which Attorney Goren billed contemporaneously in his "billing judgment," he requests a rate of $150 per hour.[7]  Dr.

---

[7] Attorney Goren also requests 9 hours, at $70 per hour, for time billed by law students.  I find this rate to be reasonable.  *See Cano* v. *Saul*, 505 F. Supp. 3d 20, 31 (D. Mass. 2020) (awarding law student "$75.00 per hour to account for his lack of

Florian contests Attorney Goren's rate of $650 per hour, advocating for a rate of $450 per hour, said to be Attorney Goren's standard hourly rate on hourly rate engagements due and payable monthly.  Dr. Florian argues that a rate of $650 is an impermissible enhancement requested because Attorney Goren took Dr. Bergus's case on a contingency basis.

I agree with Dr. Bergus that he is not seeking an enhancement of Attorney Goren's hourly rate for the risk associated with the partially contingent fee structure to which he agreed.  Rather, he posits that $650 per hour is a reasonable rate in Boston, although it is higher than the rate Attorney Goren currently charges to clients.  [Dkt. No. 193-1 at 5]  At bottom, my "primary concern is with the market value of counsel's services."  *One Star Class Sloop Sailboat built 1930*, 546 F.3d at 40.  Attorney Goren's actual rate "while not conclusive, is a reliable indicium of market value."  *Id.* Accordingly, I may "use counsel's standard rate, or the prevailing market rate in the forum, or a reasonable rate in between."  *Id.* at 41 (considering reasonable fee for out-of-state counsel).

---

experience as compared with the paralegal" in Equal Access to Justice Act fees matter); *cf. Walsh* v. *Alpha Telekom, LLC*, No. 19-2144 (CVR), 2022 WL 1165621, at *3 (D.P.R. Apr. 19, 2022) ($100.00 per hour for law student in third year).

Attorney Goren bears the burden of "justify[ing] the reasonableness of the requested rate or rates." *Blum* v. *Stenson*, 465 U.S. 886, 895 n.11 (1984).  He has submitted his own declaration summarizing his experience, along with declarations from two experienced Boston attorneys attesting to the reasonableness of a $650 per hour rate under these circumstances and considering Attorney Goren's capabilities.  I find the declarations of the outside attorneys in this matter less than entirely helpful because neither individual operates as a solo practitioner, and only one of the two has worked with Attorney Goren directly.  Taking into account the information provided to me, I find that a median rate of $550 per hour for Mr. Goren's services is appropriate under the circumstances. *Cf. Neal* v. *City of Boston*, No. 16-2848-H, 2022 WL 303492, at *7 (Mass. Super. Ct. Jan. 18, 2022) (awarding fees at $525 per hour for small firm attorney "with almost 40 years of experience" and noting that "if he was practicing in a large firm, with a host of associates to manage, his hourly rate would likely be much higher").

Dr. Florian does not challenge the $150 per hour "paralegal" rate that Attorney Goren applies to certain of his hours that reflect administrative or less-complex tasks.  This exercise of billing judgment complies with First Circuit guidance, and I find the reduced rate of $150 per hour for these

tasks to be reasonable.  *See McMillan* v. *Mass. Soc. for the
Prevention of Cruelty To Animals*, 140 F.3d 288, 308 (1st Cir.
1998) ("We have established that 'clerical or secretarial tasks
ought not to be billed at lawyers' rates, even if a lawyer
performs them.'" (quoting *Lipsett*, 975 F.2d at 940)).

    2.   For O'Connor, Carnathan & Mack LLC personnel

Dr. Florian does not challenge the rates requested for
O'Connor, Carnathan & Mack LLC ("OCM") personnel, who joined Dr.
Bergus's legal team just prior to trial.  Nevertheless, I will
assess their reasonableness in turn to provide comparative
context.  Dr. Bergus requests the following rates:  Attorney
Carnathan ($550 per hour), Attorney Hobson ($300 per hour), and
Paralegal Hartzell ($165 per hour).  Dr. Bergus has submitted
Attorney Carnathan's declaration, along with the declaration of
Francis C. Morrissey, who was engaged to offer a professional
opinion as to the reasonableness of the attorneys' fees and
expenses requested.

    *a.   Attorney Carnathan's Reasonable Rate*

Attorney Carnathan is a litigation attorney with
approximately 30 years of experience.  He is a partner at OCM,
of which he was a founder.  The requested rate of $550 per hour
is his "standard hourly rate on hourly fee engagements" in his
practice.  Attorney Carnathan's declaration outlines various
accomplishments and experiences that support his rate.  Like

Attorney Goren, Attorney Carnathan does not provide examples of
rates that he has received in other fee litigation.  However, I
will apply as reasonable his typical rate of $550 per hour,
based on the information provided to me by Attorney Carnathan
and Mr. Morrissey, who declares that Mr. Carnathan's rate is
reasonable.  *See One Star Class Sloop Sailboat built 1930*, 546
F.3d at 40 ("[T]he rate that private counsel actually charges
for her services, while not conclusive, is a reliable indicium
of market value.").

> b.  *Attorney Hobson's Reasonable Rate*

Dr. Bergus provides less justification for Attorney
Hobson's reasonable rate.  Attorney Hobson is a 2020 law school
graduate who primarily assisted with research and writing in
connection with the pretrial motions and jury instructions.  It
is not clear whether the $300 rate requested is Attorney
Hobson's typical rate for OCM engagements, although Attorney
Carnathan and Mr. Morrissey declare that it is reasonable under
the circumstances.  Dr. Bergus has not met his burden for
establishing Attorney Hobson's reasonable rate at $300 per hour.
*See Pérez-Sosa*, 22 F.4th at 325 ("The fee-seeker must carry the
burden of establishing the prevailing hourly rate . . . in the
community for the performance of similar legal services by
comparably credentialled counsel." (citation omitted)).  As
submitted, I cannot determine whether $300 per hour is Attorney

Hobson's customary rate, nor can I determine whether this rate is reasonable in Boston in this kind of case for junior attorneys of Ms. Hobson's experience not operating within a large firm business plan.  *See id.* (noting that an attorney's "actual[]" rate and "data evidencing the prevailing market rate for counsel of comparable skill" are relevant factors (citation omitted)).  Accordingly, I will reduce Attorney Hobson's requested rate from $300 to $225 per hour.  *Cf. Ellicott* v. *Am. Cap. Energy, Inc.*, No. 14-12152-FDS, 2017 WL 1224537, at *3 (D. Mass. Apr. 3, 2017) ("In the absence of any documentation justifying the rate sought, the Court will reduce [counsel]'s rate from $285 per hour to $125 per hour.").

c.   *Paralegal Hartzell's Reasonable Rate*

Dr. Bergus requests a rate of $165 per hour for Paralegal Hartzell's time.  Paralegal Hartzell has approximately 29 years of experience, a paralegal certification, and a recent award. Paralegal rates in this District vary.  *Compare United States ex rel. Herman* v. *Coloplast Corp.*, No. 11-CV-12131-RWZ, 2021 WL 3036922, at *3 (D. Mass. July 19, 2021) ($140 per hour for paralegal with "over thirty years of experience"), *and Aguiar Dias* v. *De Souza*, No. 16-40049-TSH, 2016 WL 6821067, at *3 (D. Mass. Nov. 17, 2016) (noting that $150 per hour "may be the norm for Boston"), *and Sullivan v. Experian Info. Sols., Inc.*, No. 16-11719-MPK, 2022 WL 392848, at *10 (D. Mass. Feb. 9, 2022)

("In this district, judges have found that $125/hour for paralegals . . . is reasonable."), *with Lincoln-Sudbury Reg'l Sch. Dist.* v. *W.*, No. 16-10724-FDS, 2018 WL 2023517, at *6 (D. Mass. May 1, 2018) ($90 per hour), *and Smyth* v. *Kijakazi*, No. 20-12275-MPK, 2021 WL 5771634, at *4 (D. Mass. Dec. 6, 2021) ($95 per hour).

Having reviewed the submitted materials and additional cases in this District, I find that a slight reduction is appropriate.  I will reduce Paralegal Hartzell's rate to $150 per hour, which I find reasonable under these circumstances, where Mr. Hartzell has extensive experience as documented by counsel and assisted actively at trial, as I observed.

### E.    *Adjustments to the Lodestar*

Dr. Florian makes a variety of arguments, which, generally, amount to assertions that further reductions are necessary because "[t]he extent of success achieved by a prevailing party is 'a crucial factor' in shaping a fee award," *One Star Class Sloop Sailboat built 1930*, 546 F.3d at 38 (quoting *Hensley*, 461 U.S. at 440).  Dr. Florian contends Dr. Bergus has obtained meager success when compared to the claims he initially brought in his Complaint.  Some of these contentions are addressed in my discussion of Dr. Bergus's reasonable hours.  *See generally supra* Section III.C.  There I observe that Dr. Bergus's reductions addressed whether certain claims were interconnected,

31

and in part reduced his award.  I address only Dr. Florian's additional contentions now.

Dr. Florian asserts that Dr. Bergus's requested fees must be reduced to one third of the award at trial — a structure reflecting a contingency agreement — because the fees are substantially larger than the award that Dr. Bergus obtained. *See Coutin*, 124 F.3d at 340 ("[W]hile a judge may not automatically reduce a fee award in proportion to a judgment that is significantly less than the plaintiff sought, the judge can take that small judgment into reasonable account in massaging the lodestar.").  However, "[f]ees awarded pursuant to Massachusetts statutory authority must not necessarily be reduced because they are high in relation to the award of damages."  *Arthur D. Little Int'l, Inc.* v. *Dooyang Corp.*, 995 F. Supp. 217, 225 (D. Mass. 1998).  I will not reduce Dr. Bergus's fees on this basis.  Although Dr. Bergus's fees request outpaces his damages award, a principal cause of the level of Dr. Bergus's fees request was Dr. Florian's obstructive approach and invitations to further delay in resolution of this litigation, including as exemplary the collection of motions filed after I made clear I would not displace the jury's verdict.

As to a general reduction due to "a significant gap between the relief requested and the result obtained," *Spooner* v. *EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011), I find no further

32

reduction — beyond what I have laid out — to be necessary in effectuating a reasonable fee.

## F.   *Expenses*

Dr. Bergus requests an award of non-taxable costs and expenses.  [Dkt. No. 158 at 2]  Dr. Florian does not contest Dr. Bergus's costs beyond requesting reduction to mirror a contingency fee award.  [*See* Dkt. No. 178 at 19]  Dr. Bergus's expenses purportedly consist of the following: "Peruvian expenses ($1,135.00), court appearances, parking etc. ($1,305.95), postage ($13.47), deposition, legal research expenses ($420.50)."  After a deduction of $22.41, which Dr. Bergus does not explain, and my correction for a minor arithmetic error, the total request is $2,852.51.  Dr. Bergus's submission is inadequate.  He has provided an exhibit that includes *both* taxable and non-taxable costs and expenses for Attorney Goren, without delineating which expenses fall into which category.  As to OCM, I am left, apparently, to determine the expenses by reading between the lines in Dr. Bergus's submission, which lists both time and expenses for OCM.  I "apply a similar test of reasonableness and necessity to determine what expenses should be awarded," as I do with attorney's fees.  *Grendel's Den, Inc.* v. *Larkin*, 749 F.2d 945, 951 (1st Cir. 1984).  In this instance, Dr. Bergus's jumbled submission does not assure me that the request is reasonable.

33

Accordingly, I will reduce Dr. Bergus's requested costs by 25%
to reflect his inadequate submission.

### IV. DR. BERGUS'S MOTION FOR TAXATION OF COSTS

Dr. Bergus moves [Dkt. No. 165] for $16,498.92 in taxable
costs, pursuant to 28 U.S.C. § 1920.  Under, FED. R. CIV. P.
54(d), "costs should be allowed to the prevailing party, unless
a federal statute, authority, or a court provides otherwise."
*Prouty* v. *Thippanna*, 552 F. Supp. 3d 45, 48 (D. Mass. 2021).
Section 1920 limits the taxable costs available to a prevailing
party to six categories.  *See Crawford Fitting Co.* v. *J. T.
Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987).[8]

Dr. Bergus requests costs for the filing of his Complaint
($400.00), service of process ($200.00), printed or
electronically recorded transcripts ($7,166.70), exemplification
and copies ($6,110.22), and translator fees for Señor Baca's
deposition and trial testimony ($2,622.00).  [Dkt. No. 165]  Dr.

---

[8] The six categories are:
> (1) Fees of the clerk and marshal; (2) Fees for printed
> or electronically recorded transcripts necessarily
> obtained for use in the case; (3) Fees and disbursements
> for printing and witnesses; (4) Fees for exemplification
> and the costs of making copies of any materials where
> the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title; (6)
> Compensation of court appointed experts, compensation of
> interpreters, and salaries, fees, expenses, and costs of
> special interpretation services under section 1828 of
> this title.

28 U.S.C. § 1920.

Florian summarily opposes Dr. Bergus's motion, relying on his opposition to Dr. Bergus's motion for attorney's fees as argument.

Dr. Bergus's motion is improperly formulated and inadequately supported.  Though counsel attests that its declaration was signed under the penalties of perjury, it does not contain the language required by 28 U.S.C. § 1924.  Dr. Bergus did not submit the bill of costs on an AO 133 form. Rather, Dr. Bergus submitted a list of summed costs, by category, and an export of all expenses (including non-taxable expenses) without directing me to which expenses fall into each taxable category.  He also did not submit invoices or other documents to add context to the vague and inadequate descriptions provided in his expenses export.[9]  Dr. Bergus's declaration in support provides no additional helpful detail.

I am cognizant that my ability to deny Dr. Bergus's "recovery of costs that are categorically eligible for taxation . . .operates in the long shadow of a background presumption favoring cost recovery for prevailing parties."  *In re Two Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 994 F.2d 956, 962 (1st Cir. 1993).  However, "[p]reparing a

---

[9] For example, Dr. Bergus repeatedly bills various amounts to "copies."  In many instances, he does not explain what the copies consist of, nor does he list the number of pages in each expense.

technically adequate application for costs was plaintiffs'
responsibility . . . and it was not a difficult or onerous
responsibility, given the 'bill of costs' form available from
the clerk." *Phetosomphone* v. *Allison Reed Grp., Inc.*, 984 F.2d
4, 9 (1st Cir. 1993).  I bear these competing concepts in mind
when assessing to what extent Dr. Bergus is entitled to taxable
costs.

Without more from Dr. Bergus, I only award costs for those
expenses that clearly were necessary.  On the record now before
me, I find that only the fee for the filing of the Complaint,
$400.00, is clearly reasonable and will award that cost.  *See*
*id.* (affirming disallowance of costs, other than filing fees,
because filing fees "were the only costs which, in the [trial]
court's view, could safely be assumed on their face to have been
'necessarily incurred'").  This matter has considerable
intricacies, including deposed witnesses residing abroad,
translation of documents critical to the presentation of the
case at trial, and interpreters.  More detail was required to
justify these expenses as necessary.  It was not provided and,
consequently, additional expenses will be denied.

## V. FINALITY

The entry of final judgment in this case should bring to
conclusion the litigation of the parties' state law dispute in
federal court.  To the degree that there is anything further

either party seeks to pursue on the claims litigated before this

court, the state trial court provides the forum to attempt to do

so.

The final judgment resolves all the issues the parties

ultimately chose to present to this court through trial.[10]  This

later filed federal case has always been "supplemental" to the

earlier filed state case.[11]  While the federal case is brought

under the diversity jurisdiction of this court, there is nothing

left to resolve in the federal case.  To the degree the parties

choose to pursue questions of issue preclusion from the federal

case to the state case, the state trial court is the appropriate

---

[10] Dr. Florian did not choose to press for trial in the federal
case his counterclaim for abuse of process on the basis that the
federal case was filed by Dr. Bergus as retaliation for Dr.
Florian commencing litigation between them in the state case.
Whether this choice would be construed as a waiver or forfeiture
of the counterclaim need not be resolved in the federal case.
The continued viability of the retaliation theory Dr. Florian
has raised in the litigation is best pursued in the state case
where any remaining dimensions to Dr. Florian's claims may be
fully tested against state doctrines of issue preclusion and, if
appropriate, on their merits.
[11] As my opening comments at the April 24, 2023 hearing
emphasized, I have determined not to continue exercising in this
case "what is variously called 'supplemental jurisdiction' as a
result of moving out of sequence" on the federal case before the
first filed state case.  This determination is clearly not based
on statutory supplemental jurisdiction under 28 U.S.C. § 1367
nor would the reliance of Massachusetts Blue Sky law on federal
precedent be sufficient to raise such statutory supplemental
jurisdiction.  Rather, my determination invokes case management
protocols for dealing with the sequencing between parallel state
and federal cases with overlapping issues.

forum short of appeal of the judgment now being entered.[12]
Moreover, pursuit of the fiduciary duty claim in state court in
light of intervening legal developments in Massachusetts, *see
supra* note 5, will permit state law to provide a direct
appellate path to the Supreme Judicial Court, the final
expositor of state law.  Whatever discretion I may have to delay
or prolong a case that has reached final judgment while a
parallel state case remains open, First Circuit law encourages
deference to the state courts for addressing an underlying
issue.[13]  Final judgment in this court will do so.

## VI. CONCLUSION

For the reasons set forth above, I GRANT Dr. Bergus's

---

[12] I note Dr. Florian has engaged new counsel to pursue his
federal appellate rights and filed a protective notice of appeal
from the Judgment as to Plaintiff's Claims I issued pending a
full final judgment incorporating an anticipated award of fees,
expenses and costs to frame the liability determinations the
jury had rendered as the predicate for the full final judgment.
[13] The First Circuit has in the past indicated that "a stay
pending the outcome of state proceedings [can be] the wisest
course," *Currie* v. *Group Ins. Com'n*, 290 F.3d 1, 13 (1st Cir.
2002), in federal appeals from a final judgment rendered in a
second filed parallel federal case when the state court
appellate process in that first filed parallel state case "on an
issue of state law . . . could moot or otherwise inform the
federal litigation."  *Id.* at 3.  I continue to adhere to my view
that federal courts have "the virtually unflagging obligation .
. . to exercise the jurisdiction given them."  *Colorado River
Water Conservation District* v. *United States*, 424 U.S. 800, 817
(1976).  I have done so with respect to claims pursued through
jury trial before me.  I recognize, of course, that the First
Circuit is more willing institutionally to deploy a stay as a
case management tool in parallel state and federal litigation.

motion [Dkt. No. 158] for attorney's fees and costs to the extent Dr. Florian is ORDERED to pay Dr. Bergus's attorney's fees in the amount of $546,188.70 and expenses in the amount of $2,139.31.  I GRANT Dr. Bergus's motion [Dkt. No. 165] for taxation of costs only to the extent Dr. Florian is ordered to pay the amount of $400.00.

The Clerk shall enter the final judgment in this court reflecting these determinations.


**/s/ Douglas P. Woodlock**
DOUGLAS P. WOODLOCK
United States District Judge